UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

January 24, 2019

LETTER TO COUNSEL

      RE:    *Anthony F. v. Commissioner, Social Security Administration*;[1]
              Civil No. SAG-18-1692

Dear Counsel:

      On June 8, 2018, Plaintiff Anthony F. petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny his request for waiver of an overpayment. ECF 1. I have considered the SSA's motion for summary judgment, and Plaintiff's Reply. ECF 16, 18. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the SSA's decision if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the SSA's motion and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

      Plaintiff was found disabled and began receiving disability benefits in 1990. Tr. 85, 90. In 1992, Plaintiff returned to work. Tr. 85. Two years later, on October 5, 1994, the SSA sent Plaintiff a letter stating, "Because of your work and earnings, you are no longer disabled as of November 1992, according to our rules. . . . The last month for which you are entitled to a check is January 1993." Tr. 39. The letter also reinstated Plaintiff's benefits as of October 1994, because Plaintiff had stopped working again and was within his reentitlement period. *Id.* On December 2, 1994, the SSA sent a letter to Plaintiff explaining that he had been overpaid $8,806 from February 1993 through September 1994. Tr. 192. The record does not evidence that Plaintiff appealed the overpayment, although he did submit a waiver request three years later, in 1997. Tr. 199-202.

      In the meantime, Plaintiff again returned to work, at a level qualifying as substantial gainful activity ("SGA"), in January 1996. Tr. 205. Again, more than two years later on October 2, 1998, the SSA informed Plaintiff that his entitlement to benefits had terminated effective January 1996. Tr. 203-04. The SSA later determined that Plaintiff had been overpaid another $24,244.90 from January 1996 through October 1998. Tr. 205. Again, there is no evidence that Plaintiff timely appealed the overpayment determination.

      The record includes a May 22, 1999, letter to Plaintiff from the SSA, asking for additional information regarding a waiver request. Tr. 68. Apparently, Plaintiff attended a personal conference in May 2000. Tr. 26. Though Plaintiff asserts that a decision to dismiss was made at

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

that conference, the only available record reflects that unresolved issues were left pending. Tr. 257. In 2001, an Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's waiver request, erroneously alleging that no personal conference had taken place, but also correctly stating that there was "no evidence that a decision associated with a personal conference was issued." Tr. 95-96. After that ALJ decision, the SSA sent Plaintiff individual notices of the overpayments due in 2002 and 2004. Tr. 69, 212. After eight years elapsed with no contact, in 2012, the SSA again sent correspondence to Plaintiff about the overpayment, and Plaintiff re-engaged with the SSA by filing an appeal and a new waiver request. Tr. 213, 257. The waiver was denied on initial review. Tr. 77-78. The SSA then scheduled a new personal conference in 2013. Tr. 79-82, 257. At that conference, Plaintiff acknowledged that he had accepted benefits while working substantially. Tr. 85, 127, 257. Eventually, Plaintiff's claim was presented to an ALJ at a hearing on May 11, 2006, and Plaintiff chose to appear without representation. Tr. 300-14. Following the hearing, the ALJ issued an opinion determining that Plaintiff had been overpaid, and denying waiver of the overpayment recovery by determining that Plaintiff was not without fault. Tr. 23-26. Plaintiff sought review by the Appeals Council ("AC"). The AC affirmed and incorporated most of the ALJ's decision, but limited the amount of the overpayment to $33,050.90. Tr. 14-17. Thus, the AC's decision constitutes the final, reviewable decision of the SSA.

Initially, I note that Plaintiff's arguments, at least in part, seek to overturn the assessment that an overpayment is due, by alleging that certain payments were not received. ECF 18 at 1 ("This overpayment is an incorrect statement I never accepted payment."). Those arguments cannot be considered by this Court, because the overpayment determinations from 1994 and 1998 became administratively final many years ago. *See* 20 C.F.R. § 404.905 ("An initial determination is binding unless you request a reconsideration within the stated time period, or we revise the initial determination."); 20 C.F.R. § 404.987 ("Generally, if you are dissatisfied with a determination or decision made in the administrative review process, but do not request further review within the stated time period, you lose your right to further review and that determination or decision becomes final."). For example, Plaintiff was informed in October 1998, that he had 60 days to ask for an appeal of the determination that he was not entitled to benefits beginning January 1996, and would have to fill out form SSA-561-U2 to appeal the determination. Tr. 203-04. Instead, the first form SSA-561-U2 in the record was filed on April 17, 2013, almost fifteen years after the period allowed for review had expired. Tr. 101. None of the other grounds for reopening a determination is present here. *See* 20 C.F.R. 404.988 (listing limited situations in which a determination may be reopened after the window has expired). Accordingly, this Court cannot review whether the overpayment was properly assessed, and the only issue for review is the AC's determination that the assessed overpayment of $33,050.90 is not subject to waiver because Plaintiff was not without fault.

As background, an overpayment is defined as "the difference between the amount paid to the beneficiary and the amount of the payment to which the beneficiary was actually entitled." 20 C.F.R. § 404.504. When an overpayment occurs, SSA will adjust any benefit payments due to an overpaid claimant, or recover the funds by, for example, requiring the claimant to refund the overpayment. *See* 42 U.S.C. § 404(a)(1)(A). No adjustment or recovery is permitted if: (1) the overpaid individual is without fault; and (2) recovery would defeat the purpose of Title II of the Act, or be "against equity and good conscience." 42 U.S.C. § 404(b)(1); *Garnett v. Sullivan*, 905 F.2d 778, 781 (4th Cir. 1990). In determining whether an individual is without fault, the SSA will

consider all pertinent circumstances, including any physical, mental, educational, or linguistic limitations the individual might have. *See* 42 U.S.C. § 404(b)(2); 20 C.F.R. § 404.507.

The SSA regulations provide that what constitutes fault on the part of the overpaid individual depends upon whether the facts show that the overpayment resulted from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or (b) Failure to furnish information which he knew or should have known to be material; or (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507. The overpaid individual bears the burden of demonstrating both that he is without fault, and that repayment would be inequitable, or would defeat the purposes of the Act. *Gatewood v. Astrue*, Civil No. JKS-08-1744, 2011 WL 939027, at *2 (D. Md. Mar. 16, 2011) (citing *Valente v. Sec'y of HHS*, 733 F.2d 1037, 1042 (2d Cir. 1984); *Harrison v. Heckler*, 746 F.2d 480, 482 (9th Cir. 1984)). Even when the SSA has some culpability in making the overpayment, an assessment of fault applies only to the overpaid individual. *See* 20 C.F.R. § 404.507. Thus, the facts that the SSA made overpayments, engaged in poor recordkeeping, and made erroneous statements in the course of this case are not dispositive as to whether there is fault on the part of Plaintiff. However, the SSA's actions are properly considered in assessing what Plaintiff "knew or could have been expected to know."

Ultimately, the AC supported its conclusion with substantial evidence. It concluded that, even with respect to the earlier of the two overpayments, Plaintiff had been advised on several occasions that he would not be entitled to benefits while he was engaging in SGA and that he had to report any work activity. Tr. 16-17. Specifically, the AC cited Plaintiff's receipt of a pamphlet in 1991 explaining his rights and responsibilities, Tr. 30-32, his receipt of a letter from the SSA in 1991 which emphasizes an obligation to report any changes to income, Tr. 171, and an explanation of a denial of benefits, from 1989, defining "disabled" as "unable to perform any substantial gainful work," Tr. 160. Tr. 16-17. The record becomes even clearer after that initial termination of his benefits, because Plaintiff had been notified in that time frame that the SSA was "stopping your benefits because we learned that you returned to work," and that an overpayment had been assessed. Tr. 186. Plaintiff acknowledged, once he stopped work again, that he understood that he had to report any work and that failure to do so could result in overpayment, which he would have to repay. Tr. 187.

Plaintiff argues that because SSA kept paying him after reviewing his work status, he could not have known the payments to be incorrect. ECF 18 at 1. In fact, the SSA regulations permit the payment of benefits during adjudication of a waiver request and provide: "If the final decision of the Commissioner affirms the determination that you are not entitled to benefits, you will be asked to pay back any continued benefits you receive." 20 C.F.R. § 404.1597a(j)(1). Furthermore, as noted above, even when the SSA has some culpability in the overpayment, an assessment of fault applies only to the overpaid individual, and the fact that the SSA clearly bears blame for several errors made in this case is not dispositive as to whether there is fault on the part of the Plaintiff. *See* 20 C.F.R. § 404.507. Here, the ALJ's finding of fault by the Plaintiff, as incorporated

and supplemented by the AC, Tr. 15, 16-17, was supported by Plaintiff's statements at his personal conference in 2013 and the other evidence cited by the ALJ. Tr. 25-26.

Plaintiff also contends that, at his personal conference with the SSA in 2000, a determination was made that there was no overpayment and the matter would be administratively dismissed. Tr. 303-04. The difficulty is that there is no documentation, either in Plaintiff's possession or in the SSA's files, to corroborate that assertion. SSA did establish that Plaintiff attended a personal conference in May 2000, but its records do not reflect any determination being reached or decision being issued. Tr. 257. After 2000, the SSA sent Plaintiff one collection notice in 2002, Tr. 69-72, one collection notice in 2004, Tr. 212, and then no correspondence until three collection notices were sent in 2012. Tr. 213-15. Similarly, the phone records in the transcript reflect a complete absence of communications on this matter between 2002 and 2012. Tr. 257. In light of the record evidence, which does not suggest that a decision was rendered in 2000, and the lack of any corroboration from outside sources, I cannot premise any rulings on any such unverified determination.

I note that Plaintiff expresses several entirely legitimate grievances regarding the handling of his claim by the SSA. ECF 18 at 2. There is no question that an ALJ made an erroneous statement in the 2001 opinion regarding whether a personal conference had occurred, that recordkeeping regarding the 2000 personal conference was deficient, and that the file maintained by SSA has certain gaps in documentation. However, the record equally is clear, as cited above, that Plaintiff received numerous explanations that entitlement to benefits is contingent on inability to perform SGA, that he had been notified that his benefits were stopped because he had returned to work on more than one occasion, and had acknowledged that he would be responsible for repaying any overpayment. The AC properly considered this evidence to find that Plaintiff was not without fault in accepting the overpayments for the periods of February 1993 through September 1994, and January 1996 through October 1998, in the total amount of $33,050.90. Tr. 17. The function of this Court is not to weigh conflicting evidence, determine credibility, or substitute its judgment for that of the ALJ or the AC. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curium). Because the ALJ and AC supported their decisions that Plaintiff was not without fault with substantial evidence, I must affirm.

For the reasons set forth herein, Defendant's Motion for Summary Judgment, ECF 16, is GRANTED. The SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge